**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| ARIGNA TECHNOLOGY LIMITED, | Case No. 6:21-cv-1045 |
| Plaintiff, | |
| vs. | JURY TRIAL DEMANDED |
| GOOGLE LLC, | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which Arigna Technology Limited makes the following allegations against Defendant Google LLC ("Google"), who without authority imports, makes, offers for sale and/or sells in the United States mobile devices that infringe the Patents asserted in this matter.

## PARTIES

1.      Plaintiff Arigna Technology Limited ("Plaintiff" or "Arigna") is an Irish company conducting business at The Hyde Building, Carrickmines, Suite 23, Dublin 18, Ireland. Arigna owns a portfolio of patents that cover radio frequency amplifiers and circuits with applications in a wide variety of consumer electronics products, including smartphones and laptops, as well as power semiconductors for applications in the communications, automotive, industrial automation, and energy industries. Arigna is the owner of all rights, title, and interest in and to United States Patent No. 6,603,343 (the "'343 Patent") and United States Patent No. 8,947,164 (the "'164 Patent").

2.      Google is a corporation organized under the laws of the State of California with its

headquarters at 1600 Amphitheatre Parkway, Mountain View, California 94043.

3.    Google does business in this District and across the State of Texas. It has over 1,700 full-time employees in Texas. On information and belief, they are located predominantly in this District. Google "has proudly called Texas home for more than a decade with offices in Austin and Dallas, and a data center in Midlothian—a $600M investment."[1] Google maintains regular and established places of business in this District, including offices at 500 West 2nd Street, Suite 2900, Austin, Texas 78701 and 110 East Houston Street #300, San Antonio, Texas 78205, among other locations.[2]

4.    According to Google, "Teams at Google Austin focus on Android, Google Cloud, Google Play, people operations, finance, legal, and engineering."[3] Google's website lists job openings in Google's Austin and San Antonio offices.[4] Multiple job openings for engineering roles in Google's Devices and Services group, including at senior levels, indicate that the employee can choose to work in Austin.[5] Such openings for a "CPU Silicon Engineer, Design Verification, Devices and Services" and a "CPU Emulation Engineer, Devices and Services" seek candidates

---

[1] Google, *Google is proud to call Texas home* (accessed Oct. 5, 2021), available at: https://kstatic.googleusercontent.com/files/b008bec49e466217468bdb3fbb0a9e6146435f1a75c7e ba13f30fb30c9a5871deb617df65cb75f4ca7b4fdb940d1f9c4c8b75088f4de2277c76940696d07a0 8c#:~:text=Google%20has%20proudly%20called%20Texas,Midlothian%E2%80%94a%20%24 600M%20investment.&text=Texans%20are%20employed%20full%2Dtime%20at%20Google.

[2] Google, *Our offices* (accessed Oct. 5, 2021), available at https://about.google/intl/ALL_us/locations/?region=north-america

[3] Google Economic Impact, Texas (accessed Oct. 5, 2021), available at: https://economicimpact.google.com/state/tx/.

[4] Google Careers, *Jobs* (accessed Oct. 5, 2021), available at https://careers.google.com/jobs/results/?company=Google&company=YouTube&hl=en&jlo=en-US&location=Austin,%20TX,%20USA&location=San%20Antonio,%20TX,%20USA

[5] Google Careers, Senior Engineering Manager, Compilers, Devices and Services (accessed Oct. 5, 2021), available at: https://careers.google.com/jobs/results/104794466419647174-senior-engineering-manager-compilers-devices-and-services/?company=Google&company=YouTube&hl=en&jlo=en-US&location=Austin,%20TX,%20USA&location=San%20Antonio,%20TX,%20USA&skills=h ardware%20engineering.

with electrical engineering credentials to "research, design, and develop new technologies and hardware to make computing faster, seamless, and more powerful."[6]  Given that Google gives hardware engineers the choice to work in Austin, on information and belief, documents and witnesses relevant to this action are located in this District.

5.      Google also advertises job openings for engineers to work on "CPU Front End Design," specifying Austin as one of the work locations.[7] Google's job postings indicate that candidates for such roles will "[d]evelop CPU frontend designs, emphasizing on microarchitecture and RTL design for the next generation CPU" and "[p]ropose performance enhancing microarchitecture features with efficiency in mind, and work with architects and performance teams for trade-off studies."[8] Given that Google is hiring such engineers and giving them the option to work in this District, witnesses with knowledge relevant to this action are likely to be located in this District.

6.      On information and belief, Google's in-house legal department also has a substantial presence in Austin, Texas. Google's Careers website includes job postings for both "Litigation Counsel, Patent Litigation" and "Litigation Paralegal" roles with the option to work in Austin.[9]  Given the location of Google legal personnel in Austin, on information and belief,

---

[6] Google Careers, *CPU Silicon Engineer, Design Verification, Devices and Services* (accessed Oct. 5, 2021), available at: https://careers.google.com/jobs/results/126548485169128134-cpu-silicon-engineer-design-verification-devices-and-services/?company=Google&company=YouTube&hl=en&jlo=en-xangersonUS&location=Austin,%20TX,%20USA&location=San%20Antonio,%20TX,%20USA&skills=hardware%20engineering.
[7] Google Careers, *Senior Engineer, CPU Front End Design* (accessed Oct. 3, 2021), available at: https://careers.google.com/jobs/results/143377253611250374-senior-engineer-cpu-front-end-design/?location=Texas,%20USA&q=engineer.
[8] *Id.*
[9] *See, e.g.*, Google Careers, *Litigation Counsel, Patent Litigation* (accessed Oct. 3, 2021), available at:        https://careers.google.com/jobs/results/129929351756948166-litigation-counsel-patent-litigation/?category=LEGAL&company=Google&company=YouTube&hl=en&jlo=en-US&location=Austin,%20TX,%20USA.

documents, materials, and potential witnesses relevant to this action are located in this District.

7.     Google has placed or contributed to placing infringing products, such as the Google Pixel 5, into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Western District of Texas. Google also has derived substantial revenue from infringing acts in the Western District of Texas, including from the sale and use of infringing products such as the Google Pixel 5.

8.     On information and belief, Google designs, manufactures, distributes, imports, offers for sale, and/or sells in the State of Texas and the Western District of Texas mobile devices that infringe the Patents asserted in this matter.

## JURISDICTION AND VENUE

9.     This is an action for patent infringement arising under the patent laws of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has personal jurisdiction over Google because it conducts business in and has committed acts of patent infringement in this District, the State of Texas, and elsewhere in the United States and has established minimum contacts with this forum state such that the exercise of jurisdiction over it would not offend the traditional notions of fair play and substantial justice. Upon information and belief, Google transacts substantial business with entities and individuals in the State of Texas and the Western District of Texas by, among other things, importing, offering to sell, distributing, and selling products that infringe the Asserted Patents, including the infringing mobile devices that Google purposefully directs into the State of Texas and this District as alleged herein, as well as by providing service and support to customers in this District, and/or inducing others to commit acts of patent infringement in Texas. Google places the

accused mobile devices into the stream of commerce via authorized and established distribution channels with the knowledge and expectation that they will be sold in the United States, including in the State of Texas and this District, and does not otherwise permit the sale of the accused products in the State of Texas, or in this District, outside of these established, authorized, and ratified distribution channels.

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Google has committed acts of infringement in this District and has regular and established places of business in this District, including at 500 West 2nd Street, Suite 2900, Austin, Texas 78701 and 110 East Houston Street #300, San Antonio, Texas 78205. *See In re Cray Inc.*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017).

## THE ASSERTED PATENTS

12.     This complaint asserts causes of action for infringement of United States Patent No. 6,603,343 and United States Patent No. 8,947,164 (together, the "Asserted Patents"). The Asserted Patents are valid and enforceable United States Patents, the entire right, title, and interest to which Arigna owns by assignment.

13.     The Asserted Patents relate to power semiconductor devices using high-frequency RF signals for use in mobile devices, including smartphones, tablets, and computers.

14.     On August 5, 2003, the U.S. Patent and Trademark Office duly and legally issued the '343 Patent, which is entitled "Phase Correction Circuit for Transistor Using High-Frequency Signal." Plaintiff holds all rights and title to the Patent, including the sole and exclusive right to bring a claim for its infringement. A true and correct copy of the '343 Patent is attached as **Exhibit A**.

15.     The '343 Patent generally claims a phase correction circuit for a transistor using a

high-frequency signal. The claimed phase correction circuit stabilizes a phase of an output signal of a transistor even if the transistor's gate potential is increased by a temperature increase or other factors.

16.     To the extent applicable, Plaintiff has complied with 35 U.S.C. § 287(a) with respect to the '343 Patent.

17.     On February 3, 2015, the U.S. Patent and Trademark Office duly and legally issued the '164 Patent, which is entitled "Integrated Technique for Enhanced Power Amplifier Forward Power Detection." Plaintiff holds all rights and title to the Patent, including the sole and exclusive right to bring a claim for its infringement. A true and correct copy of the '164 Patent is attached as **Exhibit B**.

18.     The '164 Patent generally claims a method for accurate power detection in power amplifiers at a low cost, and in which the power detector's design does not affect the design of the power amplifier.

19.     To the extent applicable, Plaintiff has complied with 35 U.S.C. § 287(a) with respect to the '164 Patent.

20.     Plaintiff owns all rights, title, and interest in and to the Asserted Patents and possesses all rights of recovery.

## FACTUAL ALLEGATIONS

21.     As referred to in this Complaint, and consistent with 35 U.S.C. § 100(c), the "United States" means "the United States of America, its territories and possessions."

22.     Google has no right to practice the intellectual property protected by the Asserted Patents.

23.     Google makes, uses, offers to sell, sells, and/or imports into the United States,

products made in accordance with the '343 Patent, including but not limited to the Google Pixel 5, in addition to other mobile devices including smartphones, tablets, and computers.

24.     Google also makes, uses, offers to sell, sells, and/or imports into the United States, products made in accordance with the '164 Patent, including but not limited to the Google Pixel 5, in addition to other mobile devices including smartphones, tablets, and computers.

**COUNT ONE**
**INFRINGEMENT OF U.S. PATENT NO. 6,603,343**

25.     Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

26.     Google has infringed and continues to infringe at least claim 1 of the '343 Patent in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization, products that practice at least claim 1 of the '343 Patent. Google is liable for its infringement of the '343 Patent pursuant to 35 U.S.C. § 271(a), (b), and (c).

27.     More specifically, Google designs, manufactures, assembles, imports, offers for sale, and/or sells mobile devices that incorporate the HG11-PG660-200 RF die semiconductor device and infringe at least independent claim 1 of the '343 Patent.

28.     The HG11-PG660-200 RF die is found inside the Qualcomm QTM525 mmWave antenna module. The QTM525 mmWave antenna module that includes the HG11-PG660-200 RF die is designed to be included in smartphones.

**FIGURE 1**



<u>Source</u>: Qualcomm, *Snapdragon X55 and 5G RF briefing slides* (Feb. 2019), available at:
https://www.t-mobile.com/content/dam/tfb/pdf/tfb-iot/Qualcomm_SDX55_datasheet.pdf.

29.     The QTM525 comes pre-installed in certain Google devices, including the Google

Pixel 5. Figure 2 identifies these antenna modules in the Pixel 5.

**FIGURE 2**



<u>Source</u>: Ars Technica, *Pixel 5 teardown shows off the guts of Google's latest flagship*

(Nov. 2, 2020), available at: https://arstechnica.com/gadgets/2020/11/pixel-5-teardown-shows-off-the-guts-of-googles-latest-flagship/

30.     Claim 1 is illustrative of the '343 Patent. It recites "[a] phase correction circuit for a transistor, comprising: a circuit element having an output terminal connected to a gate of a transistor to which a control signal line is connected, and an input terminal, wherein the circuit element has a reactance that changes with potential difference between the input terminal and the output terminal; and a voltage control circuit supplying a voltage to the input terminal of the circuit element so that the reactance of the circuit element decreases in response to an increase in potential of the gate, wherein a sum of the reactance of the circuit element and a gate-source reactance of the transistor remains substantially constant."

31.     Devices with transceivers, antenna modules, front-end modules (FEMs), and/or other components which incorporate the HG11-PG660-200 RF die meet every element of this claim.[10] The HG11-PG660-200 RF die contains a phase correction circuit for a transistor. For example, the transmitter portion of the HG11-PG660-200 RF die contains transistors with a phase correction circuit. For instance, a circuit element in the HG11-PG660-200 RF die (hereafter called "MOS-C") forms part of a phase correction circuitry for a transistor in the HG11-PG660-200 RF die (hereafter called "MOS7").

32.     This phase correction circuit contains a circuit element having an output terminal connected to a gate of a transistor to which a control signal line is connected. For example, in the HG11-PG660-200 RF die, the circuit element MOS-C has an output terminal connected to a gate of the MOS7 transistor. It also has an input terminal.

33.     A control signal line is also connected to the gate of the transistor. For example, a

---

[10] This description of infringement is illustrative and not intended to be an exhaustive or limiting explanation of every manner in which Google's products infringe the '343 Patent.

control signal line is connected to the gate of the MOS7 transistor through a passive bias network.

34.    The circuit element has a reactance that changes with potential difference between the input terminal and the output terminal. For example, the identified MOS-C circuit element is an NMOS Field Effect Transistor whose source and drain are connected. MOS-C acts as a varactor whose capacitance (and thus reactance) changes according to the potential difference between the input terminal (drain and source node) and the output terminal (gate node).

35.    This phase correction circuit in the HG11-PG660-200 RF die also contains a voltage control circuit supplying a voltage to the input terminal of the circuit element so that the reactance of the circuit element decreases in response to an increase in the potential of the gate. For example, another transistor in the HG11-PG660-200 RF die forms part of the voltage control circuit supplying a voltage to the input terminal of the circuit element MOS-C.

36.    The reactance of the circuit element decreases in response to an increase in potential of the gate, wherein a sum of the reactance of the circuit element and a gate-source reactance of the transistor remains substantially constant. For example, when the magnitude of the gate-source potential at MOS7 increases, it leads to a reduction in the capacitance of the circuit element (MOS-C). As the gate potential of the MOS7 gets more negative (i.e., the magnitude of gate-source potential increases), the gate-source capacitance of transistor MOS7 increases. This increase is offset, however, by the decrease in the capacitance of the circuit element (MOS-C) that occurs due to the increase in the magnitude of the gate potential of MOS7 such that the sum of capacitance (i.e. reactance) of the circuit element (MOS-C) and transistor (MOS7) remains substantially constant.

37.    Google makes, uses, imports, offers for sale, and/or sells mobile devices such as smartphones that incorporate the HG11-PG660-200 RF die in their antenna modules, including

but not limited to the Pixel 5.

38.     Google has imported and sold, and continues to sell and offer for sale, these mobile devices in the United States, including through Google websites (store.google.com) and Google authorized retailers in the Western District of Texas.

39.     Google committed and is committing the foregoing infringing activities without license from Arigna. Google's acts of infringement have damaged Arigna, as owner and assignee of the '343 Patent. Arigna is entitled to recover from Google the damages it has sustained as a result of Google's wrongful acts in an amount subject to proof at trial. Google's infringement of Arigna's rights under the '343 Patent is ongoing and will continue to damage Arigna.

40.     Beginning no later than the filing of this Complaint, Google has had actual knowledge of the '343 Patent. Google's continued infringement following the filing of this Complaint, despite its knowledge of the '343 Patent and Arigna's infringement allegations, is intentional and deliberate and willful.

41.     In addition, Google indirectly infringed, and continues to indirectly infringe, the '343 Patent by actively inducing its infringement in violation 35 U.S.C. § 271(b).

42.     Google's authorized retailers, such as Best Buy, and wireless carriers, such as Verizon, directly infringe the '343 Patent by selling the accused Google devices to consumers. Consumers directly infringe the '343 Patent by using the accused Google devices.

43.     Google knowingly induced and induces these acts of infringement with the specific intent to encourage them by taking active steps to encourage and facilitate direct infringement by these third parties, in this District and elsewhere in the United States, through its manufacture and sale of the infringing products, and through its creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical

information relating to the products with knowledge and the specific intent that its efforts will result in the direct infringement of the '343 Patent by these third parties.

44.    Such active steps include, for example, advertising and marketing the infringing products to resellers, wireless carriers, and consumers, obtaining FCC approval for such devices to be utilized in the United States, and distributing and selling such devices to consumers and resellers knowing that they would be marketed, offered for sale, and used in the United States. Google touts that Pixel 5 "phones work with 5G networks" and, specifically, with both "mmWave & Sub-6" 5G networks.[11] Further, Google's website informs consumers that "A 5G icon in your status bar shows when your phone is within an area where 5G service is available."[12]

45.    Google user guides for the accused products likewise facilitate infringement, instructing consumers about, among other things, how to "[c]onnect to mobile networks on a Pixel phone."[13] By instructing third parties to turn on and use the accused products for infringing purposes, such as to make and receive calls using the products' antenna modules, Google knowingly induces these third parties to commit infringing acts.

46.    In addition, Google has indirectly infringed and continues to indirectly infringe the '343 Patent as a contributory infringer in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, infringing products with knowledge that they are especially designed or adapted to operate in a manner that infringes the '343 Patent and despite the fact that the infringing technology is not a staple article of commerce suitable for substantial non-infringing use. Google knowingly incorporates antenna modules with the

---

[11] Pixel Phone Help, *Understand 5G network compatibility & roaming on Pixel phones* (accessed Oct. 5, 2021), available at: https://support.google.com/pixelphone/answer/10082009?hl=en.
[12] *Id.*
[13] Pixel Phone Help, *Connect to mobile networks on a Pixel phone* (accessed Oct. 5, 2021), available at: https://support.google.com/pixelphone/answer/2926415?hl=en.

infringing HG11-PG660-200 RF die into the accused Google products such that they operate in an infringing manner. By incorporating such antenna modules into its products, Google contributes to infringing use as consumers make and receive calls using the antennas of the accused products, which lack substantially non-infringing uses because the accused products are designed and manufactured to operate as phones in a manner that infringes the '343 Patent.

## COUNT TWO
## INFRINGEMENT OF U.S. PATENT NO. 8,947,164

47.     Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

48.     Google has infringed and continues to infringe at least claim 1 of the '164 Patent in violation of 35 U.S.C. § 271, either literally or through the doctrine of equivalents, by making, using, selling, or offering for sale in the United States, and/or importing into the United States, without authorization, products that practice at least claim 1 of the '164 Patent. Google is liable for its infringement of the '164 Patent pursuant to 35 U.S.C. § 271(a), (b), and (c).

49.     More specifically, Google designs, manufactures, assembles, imports, offers for sale, and/or sells mobile devices that incorporate the Qualcomm SDR865 transceiver and QPM5670 front-end module, and/or other components, which infringe at least independent claim 1 of the '164 Patent.

50.     For example, the SDR865 transceiver and QPM5670 front-end module come preinstalled in certain Google mobile devices, including the Pixel 5. Figure 3 identifies these components in the Pixel 5.

**FIGURE 3**



<u>Source</u>: Tech Insights.

51.     Claim 1 is illustrative of the '164 Patent. It recites "[a] power amplifier with power detection, comprising: a radio frequency (RF) power amplifier having a gain stage that includes a gain stage input, a gain stage output, and a feedback loop coupled between an input and an output of the power amplifier; a detection circuit having a first detection circuit input electrically coupled to the gain stage input an  d having a detection circuit output; an amplitude control circuit and a phase control circuit electrically coupled together in series between the gain stage output and a second detection circuit input; wherein the amplitude control circuit and the phase control circuit produce a signal received by the second detection circuit input so that the detection circuit detects a signal at the output of the detection circuit that has a power proportional to a forward power output of the power amplifier."

52.     The SDR865 transceiver and QPM5670 front-end module, as installed by Google

in at least the Pixel 5, meet every element of this claim.[14]

53.     A power amplifier is present in the QPM5670 with power detection provided by

the SDR865. For example, the RX19 RF AFE identified below is part of a feedback receiver in

the SDR865 that carries out a power detection function.

**FIGURE 4**



*Source*: Tech Insights, *Analysis of Qualcomm's Snapdragon SDR865 Transceiver* (accessed
Sept. 6, 2021) available at: https://www.techinsights.com/blog/analysis-qualcomms-snapdragon-
sdr865-transceiver-supporting-5g-sub-6-ghz-and-lte-services

54.     The QPM5670 front-end module contains a radio frequency (RF) power amplifier

having a gain stage that includes a gain stage input and a gain stage output. A feedback loop is

coupled between an input and an output of the power amplifier.

---

[14] This description of infringement is illustrative and not intended to be an exhaustive or limiting
explanation of every manner in which Google's products infringe the '164 Patent.

55.     The SDR865 contains a detection circuit having a first detection circuit input electrically coupled to the gain stage input and having a detection circuit output. For example, the gain stage input of the power amplifier in the QPM5670 is electrically coupled to a first detection circuit input in the SDR865.

56.     The SDR865 and QPM5670 also contain an amplitude control circuit and a phase control circuit electrically coupled together in series between the gain stage output and a second detection circuit input. The phase control circuit consists of an inductor and a capacitor in series with a low noise amplifier acting as an amplitude control circuit.

57.     The amplitude control circuit and the phase control circuit produce a signal received by the second detection circuit input so that the detection circuit detects a signal at the output of the detection circuit that has a power proportional to a forward power output of the power amplifier. For example, the amplitude and phase control circuit produce a signal that is received into the mixer of the detection circuit (second input). The mixer also receives a LO signal (first input) and the result is used to estimate the forward power output of the power amplifier in the front-end module.

58.     Google makes, uses, imports, offers for sale, and/or sells mobile devices that incorporate the infringing combination of SDR865 and QPM5670 components, and/or others that perform in substantially equivalent manners, including the Pixel 5.

59.     Google has imported and sold, and continues to sell and offer for sale, these mobile devices in the United States, including through Google websites (store.google.com) and Google authorized retailers in the Western District of Texas.

60.     Google committed and is committing the foregoing infringing activities without license from Arigna. Google's acts of infringement have damaged Arigna, as owner and assignee

of the '164 Patent. Arigna is entitled to recover from Google the damages it has sustained as a result of Google's wrongful acts in an amount subject to proof at trial. Google's infringement of Arigna's rights under the '164 Patent will continue to damage Arigna.

61.     Beginning no later than the filing of this Complaint, Google has had actual knowledge of the '164 Patent. Google's continued infringement following the filing of this Complaint, despite its knowledge of the '164 Patent and Arigna's infringement allegations, is intentional and deliberate and willful.

62.     In addition, Google indirectly infringed, and continues to indirectly infringe, the '164 Patent by actively inducing its infringement in violation 35 U.S.C. § 271(b).

63.     Google's authorized retailers, such as Best Buy, and wireless carriers, such as Verizon, directly infringe the '164 Patent by selling the accused Google devices to consumers. Consumers directly infringe the '164 Patent by using the accused Google devices.

64.     Google knowingly induced and induces these acts of infringement with the specific intent to encourage them by taking active steps to encourage and facilitate direct infringement by these third parties, in this District and elsewhere in the United States, through its manufacture and sale of the infringing products, and through its creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to the products with knowledge and the specific intent that its efforts will result in the direct infringement of the '164 Patent by these third parties.

65.     Such active steps include, for example, advertising and marketing the infringing products to resellers, wireless carriers, and consumers, obtaining FCC approval for such devices to be utilized in the United States, and distributing and selling such devices to consumers and resellers knowing that they would be marketed, offered for sale, and used in the United States.

Google user guides for the accused products facilitate infringement, instructing consumers about, among other things, "turn your phone on and off with the top button on the right side."[15] By instructing third parties to turn on and use the accused products, Google knowingly induces these third parties to commit infringing acts as the power detection functions of the infringing products operate.

66.     In addition, Google has indirectly infringed and continues to indirectly infringe the '164 Patent as a contributory infringer in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, infringing products with knowledge that they are especially designed or adapted to operate in a manner that infringes the '164 Patent and despite the fact that the infringing technology is not a staple article of commerce suitable for substantial non-infringing use. Google knowingly incorporates specific transceivers and front-end modules into the accused products such that they operate in an infringing manner. By incorporating such devices into its products, Google contributes to infringing use as consumers turn on and use the accused products, which lack substantially non-infringing uses because the accused products are designed and manufactured to operate as smartphones in a powered-on mode that infringes the '164 Patent.

## DEMAND FOR JURY TRIAL

67.     Plaintiff Arigna hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Arigna Technology Limited requests entry of judgment in its favor and against Defendant Google as follows:

A.     Declaring that Google has infringed United States Patent No. 6,603,343;

---

[15] Pixel Phone Help, *Turn your Pixel phone on & off* (accessed Oct. 5, 2021), available at: https://support.google.com/pixelphone/answer/7374159?hl=en.

B.      Declaring that Google has infringed United States Patent No. 8,947,164;

C.      Declaring that Google's infringement of United States Patent No. 6,603,343 has been willful and deliberate, at least from the filing of this Complaint;

D.      Declaring that Google's infringement of United States Patent No. 8,947,164 has been willful and deliberate, at least from the filing of this Complaint;

E.      Awarding damages to Plaintiff in an amount no less than a reasonable royalty for Google's infringement of United States Patent No. 6,603,343 and United States Patent No. 8,947,164, together with treble damages for willful infringement, prejudgment and post-judgment interest, and costs as permitted under 35 U.S.C. § 284;

F.      Awarding attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

G.      Ordering Google to pay supplemental damages to Arigna, including any ongoing royalties and interest, with an accounting, as needed; and

H.      Awarding such other costs and further relief as the Court may deem just and proper.


Dated:  October 6, 2021                    Respectfully submitted,

                                           /s/ *Charles L. Ainsworth*

                                           Charles L. Ainsworth (Texas 00783521)
                                           Robert Christopher Bunt (Texas 00787165)
                                           PARKER, BUNT & AINSWORTH, P.C.
                                           100 East Ferguson, Suite 418
                                           Tyler, Texas 75702
                                           Tel: (903) 531-3535
                                           Email: charley@pbatyler.com
                                           Email: rcbunt@pbatyler.com

                                           Matthew R. Berry
                                           Andres Healy
                                           John E. Schiltz
                                           Kemper Diehl
                                           SUSMAN GODFREY L.L.P.

1201 Third Avenue, Suite 3800
Seattle, TX 98101-3000
Tel: (206) 516-3880
Fax: (206) 516-3883
Email: mberry@susmangodfrey.com
Email: ahealy@susmangodfrey.com
Email: jschiltz@susmangodfrey.com
Email: kdiehl@susmangodfrey.com

***Attorneys for Arigna Technology Limited***